UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

------------------------------------------------------------ x
ROSARIO R.,                                    :
                                               :        **RULING & ORDER ON**
                              Plaintiff,        :        **PLAINTIFF'S MOTION**
                                               :        **TO REVERSE OR**
         -against-                             :        **REMAND AND**
                                               :        **DEFENDANT'S MOTION**
FRANK BISIGNANO,                               :        **TO AFFIRM DECISION**
Commissioner of Social Security, [1]            :        **OF COMMISSIONER**
                                               :
                              Defendant.         :        3:24-CV-1445 (VDO)
                                               :
------------------------------------------------------------ x

**VERNON D. OLIVER**, United States District Judge:

Plaintiff Rosario R. [2] has filed an administrative appeal under 42 U.S.C. § 405(g) against Commissioner of Social Security ("Defendant" or "Commissioner"). She seeks to reverse the decision of the Commissioner denying her claim for Disability Insurance Benefits ("DIB"), or, in the alternative, to remand the case for a new hearing. (ECF No. 19.) The Commissioner has moved to affirm the decision. (ECF No. 21.)

For the reasons set forth below, the Court **denies** Plaintiff's motion and **grants** Defendant's motion.

---

[1] On May 7, 2025, Frank Bisignano became the Commissioner of the Social Security Administration. Pursuant to Federal Rule of Civil Procedure 25(d), the Clerk of Court is directed to substitute Frank Bisignano for Michelle King in this action.

[2] Plaintiff is identified by her first name and last initial pursuant to the District's January 8, 2021 Standing Order. *See* Standing Order Re: Social Security Cases, No. CTAO-21-01 (D. Conn. Jan 8, 2021).

## I.    **BACKGROUND**

The Court assumes familiarity with Plaintiff's medical history, as summarized in both Plaintiff's Memorandum in Support of the Motion to Reverse the Commissioner's Decision[3] and Defendant's Memorandum in Support of the Motion to Affirm the Commissioner's Decision.[4] The Court adopts and incorporates both statements of fact by reference.

On March 22, 2012, Plaintiff applied for a period of DIB under Title II of the Social Security Act and Title XVI of the Social Security Act.[5] Her applications have resulted in five hearings before Administrative Law Judges ("ALJs") and several federal proceedings. In matters pending in the District of Connecticut in 2015 and 2017, the Commissioner twice moved for remand to the agency.[6] In 2019, the district court (Richardson, J.) issued an opinion on the ALJ's then-operative decision and ordered a new hearing.[7] When an unfavorable decision again resulted in a federal appeal, the Commissioner again moved for remand in 2023.[8] Following entry of judgment in that matter, the Appeals Council remanded the matter for further proceedings.[9] Plaintiff, her representative (Ivan M. Katz), and a vocational expert (Renee Jubrey) participated in a telephonic hearing before ALJ Imelda K. Harrington on April 4, 2024.[10]

---

[3] Memo. ISO Mot. to Reverse, ECF No. 19-1.

[4] Mot. to Affirm, ECF No. 21.

[5] R. 3533.

[6] *See Plaintiff v. Colvin*, No. 15-CV-903 (D. Conn.), *Plaintiff v. Berryhill*, No. 17-CV-1865 (D. Conn.).

[7] *Plaintiff v. Berryhill*, No. 19-CV-389, ECF No. 22 (D. Conn. July 20, 2020).

[8] *Plaintiff v. Kijakazi*, No. 23-CV-220, ECF No. 19 (D. Conn. Aug. 14, 2023).

[9] R. 3300–3307.

[10] R. 3259–3294.

On June 21, 2024, ALJ Harrington issued an unfavorable decision, concluding that Plaintiff was not disabled from March 15, 2013, to November 30, 2022.[11] The ALJ found that Plaintiff had several severe impairments, including fibromyalgia, but she determined that Plaintiff could perform light work as defined by 20 C.F.R. §§ 404.1567(b), 416.967(b), including her past work as a sewing machine operator.

Plaintiff initiated the instant action on September 6, 2024. Plaintiff then moved to reverse the decision of the Commissioner on January 6, 2025. On February 5, 2025, the Commissioner filed a cross-motion to affirm the decision.

## II.    LEGAL STANDARD

"Congress has authorized federal courts to engage in limited review of final SSA disability benefit decisions." *Schillo v. Kijakazi*, 31 F.4th 64, 74 (2d Cir. 2022); *see also* 42 U.S.C. § 405(g) ("The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."). "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive[.]" 42 U.S.C. § 405(g). Therefore, a court may "set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by substantial evidence or if the decision is based on legal error." *Burgess v. Astrue*, 537 F.3d 117, 127 (2d Cir. 2008) (internal quotation marks and citation omitted). "'Substantial evidence' is evidence that amounts to 'more than a mere scintilla,' and has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a

---

[11] R. 3224–3258.

conclusion.'" *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). "If evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld." *McIntyre*, 758 F.3d at 149.

To be disabled, thus qualifying a claimant to benefits, a claimant must have an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423 (d)(1)(a); *Cichocki v. Astrue*, 729 F.3d 172, 176 (2d Cir. 2013). In determining whether a claimant is disabled, "the agency follows a five-step process detailed in 20 C.F.R. § 404.1520(a)(4)(i)–(v)[,]" as set forth below:

> Under the five-step process, the Commissioner determines: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe physical or mental impairment, or combination of severe impairments; (3) whether the impairment (or combination) meets or equals the severity of one of the impairments specified in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listing of Impairments"); (4) whether, based on an assessment of the claimant's residual functional capacity, the claimant can perform any of her past relevant work; and (5) whether the claimant can make an adjustment to other work given the claimant's residual functional capacity, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(i)–(v).

*Schillo*, 31 F.4th at 70. The Commissioner considers whether "the combined effect of any such impairment . . . would be of sufficient severity to establish eligibility for Social Security benefits." 20 C.F.R. § 404.1523. While the finding of whether a claimant is disabled is reserved to the Social Security Administration ("SSA"), the SSA must consider an opinion the data in that opinion indicate disability. *Id.* at 71 (citing *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999)).

## III.    <u>DISCUSSION</u>

Plaintiff makes four arguments in her motion. First, she contends that the ALJ improperly evaluated Plaintiff's fibromyalgia in accordance with the proper Social Security regulation.[12] Second, she argues that the ALJ failed to fully develop the record insofar as she did not request certain medical opinions.[13] Third, she argues that the ALJ did not abide by the treating physician rule.[14] Finally, she argues that the ALJ (1) did not solicit sufficient information about Plaintiff's former work as a sewing machine operator and (2) formulated improper hypothetical questions during the hearing.[15]

### A.    **Duty to Develop the Record**[16]

Plaintiff argues that the ALJ failed to develop the administrative record in a variety of ways. First, the ALJ failed to obtain (1) an opinion or a function-by-function evaluation from Dr. Beauboeuf, Plaintiff's primary care physician between 2019 and 2023, and (2) an opinion from Dr. Nascimento, who treated Plaintiff in 2013 and 2014, and (3) an opinion from APRN Latorre, who treated Plaintiff in 2014 and 2015. Finally, Plaintiff contends that the ALJ should have obtained a more current statement of Plaintiff's mental limitations from Dr. Camacho.

---

[12] Memo. ISO Mot. to Reverse at 11–18.

[13] *Id.* at 18–20.

[14] *Id.* at 20–25.

[15] *Id.* at 25–32.

[16] The Court addresses this issue first because the question of "[w]hether the ALJ has met his duty to develop the record is a threshold question. Before reviewing whether the Commissioner's final decision is supported by substantial evidence . . . the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the Secretary's regulations and also fully and completely developed the administrative record." *Craig v. Comm'r of Soc. Sec.*, 218 F. Supp. 3d 249, 261–63 (S.D.N.Y. 2016) (internal quotation marks and citations omitted); *see also* 42 U.S.C. § 405(g).

The Commissioner, on the other hand, submits that relevant regulations "put the onus on Plaintiff to develop the record," which, after "two consultative examinations in 2022 as well as 5 hearings and 5 ALJ decisions," "is as developed as it is ever going to be[.]"[17]

Despite the Commissioner's arguments to the contrary, the ALJ has a well-established "affirmative obligation to develop the administrative record" because of the non-adversarial nature of the proceedings. *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996); *see also Swiantek v. Comm'r of Soc. Sec.,* 588 F. App'x 82, 84 (2d Cir. 2015). Several courts in the Circuit have found that an ALJ "must make reasonable efforts to obtain a report prepared by a claimant's treating physician even when the treating physician's underlying records have been produced." *Paredes v. Comm'r of Soc. Sec.*, No. 16-CV-810, 2017 WL 2210865, at 17 (S.D.N.Y. May 19, 2017).

But an ALJ is under no obligation to seek out additional information "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history.'" *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999) (quoting *Perez*, 77 F.3d at 48). Thus, the Second Circuit has held that "remand is not always required" when an ALJ neglects to request opinions from treating physicians. *Tankisi v. Comm'r of Soc. Sec.*, 521 F. App'x 29, 34 (2d Cir. 2013); *see also Swiantek*, 588 F. App'x at 84 ("Given the extensive medical record before the ALJ in this case, we hold that there were no 'obvious gaps' that necessitate remand solely on the ground that the ALJ failed to obtain a formal opinion from one of MLS's treating physicians."). As long as "the record contains sufficient evidence from

---

[17] Mot. to Affirm at 11–12.

which an ALJ can assess the [claimant's] residual functional capacity," an ALJ need not seek out a medical source statement. *Tankisi*, 521 F. App'x at 34.

In the Court's view, the ALJ was under no obligation to further develop the record. Following several administrative hearings spanning many years, the record now contains many hundreds of pages of treatment notes from Plaintiff's doctors and nurses, as well as Plaintiff's own testimony. More specifically, the record includes detailed notes from Plaintiff's appointments with various doctors between 2007 and 2023; it also includes reports from consultative examiners and at least one of Plaintiff's treating physicians.[18] Dr. Jesus Lago examined Plaintiff in 2012 and in 2022: both reports made their way into the record.[19] Dr. Adrian Klufas also examined Plaintiff twice,[20] and her treating psychiatrist, Dr. Camacho, submitted two reports to the State Agency Disability Determination Services ("DDS").[21] After a careful review of the record, the Court finds no "obvious gap" that the ALJ was required to fill. *Rosa*, 168 F.3d at 79 n.5.

Plaintiff primarily argues that the ALJ was required to obtain a medical source statement or a function-by-function report from Dr. Beauboeuf, who treated Plaintiff at BCHC between 2019 and 2023. But neither the Second Circuit nor the district courts within the Circuit have taken such a blunt approach to this issue; again, the simple fact that an ALJ declined to obtain an opinion from a treating physician does not constitute legal error that necessitates remand for further development of the record. *See Tankisi*, 521 F. App'x at 34; *Crepo v.*

---

[18] R. 1271–74.

[19] *Id.* at 620–23; 3212–17.

[20] *Id.* at 624–27; 3210–11.

[21] *Id.* at 628–31; 1271–74.

*Comm'r of Soc. Sec.*, No. 18-CV-435, 2019 WL 4686763, at *3 (D. Conn. Sept. 25, 2019). In the same vein, "remand is not necessary merely because an explicit function-by-function analysis was not performed." *Cichocki*, 729 F.3d at 177. Here, Dr. Boeuboeuf's notes appear in the record. The ALJ was permitted to rely on these notes without also ordering a medical source statement or function-by-function analysis from this physician. The same logic applies to the notes of Dr. Nascimento and APRN Latorre, which appear in the record.[22]

Plaintiff does not explain the significance or importance of a medical opinion from Dr. Boeuboeuf, Dr. Nascimento, or APRN Latorre. The Court is left to guess at what these medical professionals would have recommended. Based on Dr. Boeuboeuf's notes, for instance, the Court cannot conclude that an opinion from her office would support Plaintiff's claims. Nor can the Court conclude that an opinion from Dr. Nascimento or APRN Latorre would support Plaintiff's claim of disability. Neither saw Plaintiff more than a few times during the relevant period.[23] Thus, because Plaintiff has not adequately explained the significance of these missing opinions, the Court concludes that the ALJ did not commit legal error when she failed to obtain assessments from these medical professionals. *See Velazquez v. Berryhill*, No. 18-CV-1385, 2019 WL 1915627, at *6 (D. Conn. Apr. 30, 2019) ("[P]laintiff has failed to articulate how a function-by-function assessment authored by APRN Kumar would be 'significant.'"); *Wright v. Berryhill*, No. 16-CV-6156, 2017 WL 2720004, *4 (W.D.N.Y. June 23, 2017) ("[T]he Court believes that a remand for [the purpose of obtain a report form a treating physician] would be

---

[22] Plaintiff does not argue that certain treatment notes are missing from the record.

[23] R. 637–640; 670.

an exercise in futility, since the medical notes give no indication that such a report would support Plaintiff's claim of disability.").

Further, several courts in the Circuit have found that an APRN may not issue a medical opinion. Under the relevant regulations, "medical opinions" are "statements from acceptable medical sources," including licensed physicians, psychologists, optometrists, podiatrists, and speech-language pathologists. *See* 20 C.F.R. §§ 404.1513(a)(1)–(5), 416.913(a)(1)–(5), 416.927; Social Security Ruling 06-03p, 2006 WL 2329939, at *1 (S.S.A. Aug. 9, 2006). Because nurse practitioners do not appear on the list of acceptable medical sources, they cannot "even give medical opinions." *See Wider v. Colvin*, 245 F. Supp. 3d 381, 389 (E.D.N.Y. 2017); *Perez v. Berryhill*, No. 15-CV-01841, 2018 WL 948285, at *6 (D. Conn. Feb. 20, 2018) ("Some courts have found that an APRN standing alone may not issue a 'medical opinion.'"). Thus, because APRN Latorre could not provide a "medical opinion," the ALJ did not err when she failed to request such an opinion from him. *See Velazquez*, 2019 WL 1915627, at *5–6.

As to Plaintiff's argument that the ALJ should have obtained a more recent opinion from Dr. Camacho, the Court also disagrees. An ALJ should not rely on stale medical opinions "rendered before some significant development in the claimant's medical history." *Sonia N. B. A. v. Kijakazi*, No. 21-CV-709, 2022 WL 2827640, at *5 (D. Conn. July 20, 2022). For instance, a medical opinion that does not account for a claimant's deteriorating condition may be stale, just as a medical opinion issued before a claimant undergoes surgery may be stale. *See Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) (finding medical opinion stale when issued five years before ALJ decision and before two subsequent surgeries). However, an opinion is not stale where "the treatment notes and opinions in the record before and after [the opinion was issued] demonstrate substantially similar limitations and findings."

*Camille v. Colvin*, 104 F. Supp. 3d 329, 344 (W.D.N.Y. 2015); *see also Biro*, 335 F. Supp. 3d at 470 ("A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age."). "Nor is a medical opinion stale 'merely because it pre-dates other evidence in the record, where the subsequent evidence does not undermine the opinion evidence.'" *Sonia N.B.A.*, 2022 WL 2827640, at *5 (quoting *Steve P. v. Comm'r of Soc. Sec.*, No. 19-CV-0492, 2021 WL 307566, at *5 (W.D.N.Y. Jan. 29, 2021)).

First, the ALJ assigned "minimal weight" to Dr. Camacho's opinion from 2017. Thus, even if the opinion was stale, that staleness had little effect on the ALJ's decision. Second, Plaintiff does not specify why the ALJ should have obtained a more current opinion from Dr. Camacho. In other words, Plaintiff does not explain the "significant development" in her medical history that allegedly renders Dr. Camacho's opinion from 2017 stale. *Sonia N. B. A.*, 2022 WL 2827640, at *5. Dr. Camacho treated Plaintiff for recurrent major depressive disorder for several years; nothing in the record suggests that her depression worsened or deteriorated after 2017. In fact, some records reveal that Plaintiff had few to no complaints in the period between 2017 and 2022.[24] A more recent opinion from Dr. Camacho could well have cut against Plaintiff's claim of disability.

In short, the ALJ was not required to obtain a more recent opinion from Dr. Camacho, nor was she required to obtain an opinion or statement from Dr. Beauboeuf, Dr. Nascimento, or APRN Latorre.

---

[24] R. 2598, 2615, 2632, 2649, 2667, 2703.

### B.    Treating Physician Rule

Next, Plaintiff argues that the ALJ violated the treating physician rule by assigning only minimal weight to Dr. Camacho's 2017 opinion without "explicitly" applying the *Burgess* factors. *See Burgess v. Astrue*, 537 F.3d 117, 129 (2d Cir. 2008) (citing 20 C.F.R. § 404.1527(c)(2)). Plaintiff also contends that the ALJ should have sought additional information or clarification from Dr. Camacho. In response, the Commissioner argues that the ALJ considered the *Burgess* factors and therefore committed no legal error.

Because treating physicians "are likely to be the medical professionals most able to provide a detailed, longitudinal picture of [the claimant's] medical impairment(s)," *Rolon v. Comm'r of Soc. Sec.*, 994 F. Supp. 2d 496, 506 (S.D.N.Y. 2014) (citing 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2)), the "treating physician rule" provides that "a treating physician's opinion is entitled to 'controlling weight' when it is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] case record,'" *Gualano v. Comm'r of Soc. Sec.*, 415 F. Supp. 3d 353, 358 (W.D.N.Y. 2019) (citing 20 C.F.R. § 404.1527(c)(2)). If an ALJ does not give a treating physician's opinion controlling weight, she must give "good reasons" for discounting it. *Rolon*, 994 F. Supp. 2d at 508.

The ALJ must explicitly "consider various factors to determine how much weight to give to the opinion." *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (internal quotation marks omitted). These factors, known as the *Burgess* factors, are "(1) the frequency of examination and length, nature, and extent of the treatment relationship, (2) the evidence in support of the physician's opinion, (3) the consistency of the opinion with the record as a whole, (4) whether the opinion is from a specialist, and (5) whatever other factors tend to

support or contradict the opinion." *Gunter v. Comm'r of Soc. Sec.*, 361 F. App'x 197, 199 (2d Cir. 2010). The opinion of a treating physician takes on added importance when a claimant's alleged impairments relate to her mental health. *See Torres v. Saul*, No. 19-CV-1160, 2020 WL 6144658, at *6 (D. Conn. Oct. 20, 2020); *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 342 (E.D.N.Y. 2010) ("Because mental disabilities are difficult to diagnose without subjective, in-person examination, the treating physician rule is particularly important in the context of mental health.").

Typically, an ALJ's failure to explicitly consider the *Burgess* factors is "a procedural error warranting remand." *Guerra v. Saul*, 778 F. App'x 75, 77 (2d Cir. 2019). But remand is not necessary if a "searching review of the record shows that the ALJ has provided good reasons for its weight assessment." *Id.* (internal quotation marks omitted); *Schillo*, 31 F.4th at 79 ("[A]lthough the ALJ should have proceeded more methodically through the factors enumerated in § 404.1527(c)(2), it is evident that she applied the substance of the treating physician rule."). Nor is remand necessary where the error is harmless—that is, where "application of the correct legal standard could lead to only one conclusion." *Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010) (internal citation omitted). In general, courts will "not hesitate to remand when the Commissioner has not given good reasons for the weight given to a treating physician's opinion." *Gunter*, 361 F. App'x at 199.

The Court concludes that the ALJ did not violate the treating physician rule. In her analysis of Dr. Camacho's opinion, the ALJ provided "good reasons" for discounting it: not only did she note that the opinion was conclusory, "with minimal explanation of the clinical findings," but she also identified the opinion as "unsupported by the various psychiatric

treatment notes, and consultative examiner reports, and GAF score[.]"[25] Moreover, she took the *Burgess* factors into account. First, though she did not expressly consider "the frequency of examination and length, nature, and extent of the treatment relationship" in the paragraph in which she assigned minimal weight to his opinion, she devoted over a page of her analysis to the treatment relationship and history between Dr. Camacho and Plaintiff.[26] In reviewing these treatment notes from 2014 through 2018, the ALJ must have considered the nature, length, and extent of the treatment relationship at issue, as well as Dr. Camacho's background in psychiatry, the fourth factor. *See Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013) ("We require no such slavish recitation of each and every factor where the ALJ's reasoning and adherence to the regulation are clear."); *Jones v. Colvin*, No. 16-CV-443, 2017 WL 758511, at *5 (N.D.N.Y. Feb. 27, 2017) (finding that ALJ considered first and fourth factors by discussing treatment letters and plaintiff's visits to physician and reviewing relevant records).

The ALJ also considered the second and third *Burgess* factors: she noted that Dr. Camacho's opinion as to Plaintiff's mental limitations was "unsupported" by much of the record, including reports from consultative examiners and Dr. Camacho's own treatment notes.[27] Indeed, Dr. Lago performed two consultative psychological examinations and found that Plaintiff had no relevant limitations.[28] And Dr. Camacho's treatment notes are at odds with his 2017 opinion as to her limitations. Many of his treatment notes do not suggest "moderate" limitations in Plaintiff's ability to remember information, apply information,

---

[25] R. 3245.

[26] *Id.* at 3235–3236.

[27] R. 3245.

[28] *Id.* 620–23; 3212–17.

interact with others, concentrate, persist, or adapt in the workplace.[29] For instance, he described Plaintiff as "[b]right looking, smiling, pleasant" when she came in "for medication management" in July 23, 2015.[30] In the subsequent treatment notes, he offered a similar description of Plaintiff or no description at all, simply stating that she was "tolerating her medications well."[31] Occasionally, Dr. Camacho described her "mood and affect [as] bland."[32] In 2017 and 2018, he noted several times that she "had no problems" or "no complaints."[33] He made similar observations in 2020 and 2021, sometimes remarking on her "good spirits" and pleasant demeanor.[34] In short, the ALJ reasonably concluded that "various psychiatric treatment notes" did not support Dr. Camacho's opinion as to Plaintiff's mental limitations. The ALJ addressed the relevant *Burgess* factors, and she provided "good reasons" in support of her conclusion. *See Heitz v. Comm'r of Soc. Sec.*, 201 F. Supp. 3d 413, 423 (S.D.N.Y. 2016) (finding that ALJ satisfied the "good reasons" rule by articulating specific reasons why opinion was unsupported by medical evidence and offering examples).

Plaintiff also contends that the ALJ should have sought clarification from Camacho. This is a variation on the argument, addressed above, that the ALJ should have further developed the record. Again, the ALJ has an affirmative duty to develop the claimant's medical

---

[29] *Id.* at 1273.

[30] *Id.* at 1044.

[31] *Id.* at 1047, 1052, 1061, 1071, 1074, 1083, 1088.

[32] *Id.* at 1098, 1103.

[33] *Id.* at 1144, 1516, 1522, 1589,

[34] *Id.* at 2598, 2615, 2632, 2649, 2667, 2703. Her infrequent complaints—a metallic taste in her mouth due to medication, muscle spasms—do not suggest any moderate impairment in her ability to remember information, apply information, interact with others, concentrate, persist, or adapt in the workplace.

history and seek additional information from the treating physician, *sua sponte*, even if plaintiff is represented by counsel to clarify the bases for the physician's opinions in the face of a seeming lack of support. *See Rosa*, 168 F.3d at 79. Failure to re-contact a treating physician may constitute error and serve as grounds for remand. *See Taylor v. Astrue*, No. 07-CV-3469, 2008 WL 2437770, at *3 (E.D.N.Y. June 17, 2008) (finding that it was error for ALJ to fail to seek additional information from plaintiff's treating physician when he determined that the physician's opinion was "not well-supported by objective medical evidence"). That said, "where there are no obvious gaps in the administrative record, and where the ALJ already possesses a 'complete medical history,'" the ALJ has "no obligation" to gather additional information before rejecting a benefits claim. *Rosa*, 168 F.3d at 79 n.5; *see also Ayers v. Astrue*, No. 08-CV-69A, 2009 WL 4571840, at *2 (W.D.N.Y. Dec. 7, 2009).

Again, as noted above, the Court has identified no "obvious gap" in the record. Plaintiff points to no such gap in her brief. In making this decision, the ALJ had access to hundreds of pages of treatment records—including all of Dr. Camacho's treatment notes, spanning several years, and the consultative examiner's two statements. In the Court's view, the ALJ possessed a "complete medical history." *Rosa*, 168 F.3d at 79 n.5. Because it is the "sole responsibility of the ALJ to weigh all the medical evidence and resolve any material conflicts in the record where the record provides sufficient evidence for such a resolution," the ALJ was permitted to assign less weight to Dr. Camacho's 2017 opinion without seeking clarification. *Micheli v. Astrue*, 501 F. App'x 26, 29–30 (2d Cir. 2012) (rejecting argument that ALJ was required to re-contact treating physician where report was "unsupported or internally inconsistent"); *see Richardson,* 402 U.S. at 399 ("We therefore are presented with the not uncommon situation of

conflicting medical evidence. The trier of fact has the duty to resolve that conflict."); *O'Dell v. Colvin*, No. 16-CV-368, 2016 WL 6882861, at *26–27 (S.D.N.Y. Nov. 22, 2016).

### C.    Evaluation of Plaintiff's Fibromyalgia

Plaintiff argues that the ALJ erred in evaluating Plaintiff's fibromyalgia at step four. She suggests that the ALJ did not properly weigh Plaintiff's reports of pain in determining the severity of the condition, as required by Social Security Ruling 12-2p ("SSR 12-2p"), 2012 WL 3104869 (S.S.A. July 25, 2012). The Commissioner argues that the ALJ reviewed the record in conformity with the Social Security Ruling.

Fibromyalgia is a "complex medical condition characterized primarily by widespread pain in the joints, muscles, tendons, or nearby soft tissues that has persisted for at least 3 months." SSR 12-2p, 2012 WL 3104869, at *2. The disease is of "musculoskeletal origin but uncertain cause." *Green-Younger v. Barnhart*, 335 F.3d 99, 101 n.1 (2d Cir. 2003). The Second Circuit has recognized that "no objective tests . . . can conclusively confirm [fibromyalgia]," which is a "disabling impairment." *Id.* at 108. SSR 12-2p lays out how the Commissioner should evaluate fibromyalgia claims. Of relevance here, the ruling provides:

> Once [a medically determinable impairment] is established, we . . . evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate the symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

SSR 12-2p, 2012 WL 3104869, at *5. "Objective medical evidence is evidence obtained from the application of medically acceptable clinical and laboratory diagnostic techniques, such as

evidence of reduced joint motion, muscle spasm, sensory deficit or motor disruption." 20 C.F.R. § 404.1529(c)(2). In fibromyalgia cases, if the objective medical evidence is inconsistent with a plaintiff's testimony regarding her functional limitations, the ALJ *must* look beyond the objective medical evidence and "consider all of the evidence in the case record[.]" SSR 12-2p, 2012 WL 3104869 at *5; *see Cheryl L. v. Comm'r of Soc. Sec.*, No. 21-CV-704, 2022 WL 2980821, *7 (D. Conn. July 28, 2022).

Here, the ALJ found at step two that Plaintiff's fibromyalgia was a severe impairment.[35] At step four, the ALJ then determined that "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"[36] In other words, the ALJ found that Plaintiff's fibromyalgia was a medically determinable impairment; the ALJ was therefore required to "evaluate the intensity and persistence of the person's pain or any other symptoms and determine the extent to which the symptoms limit the person's capacity for work." SSR 12-2p, 2012 WL 3104869, at *5.

The ALJ followed the steps set forth in SSR 12-2p. Not only did the ALJ evaluate the objective medical evidence related to Plaintiff's reports of pain, but the ALJ also looked at "all of the evidence in the case record" in weighing these reports of pain. SSR 12-2p, 2012 WL 3104869, at *5. For instance, the ALJ looked to Plaintiff's "medications or other treatments,"

---

[35] R. 3233.

[36] *Id.* at 3240.

noting that Plaintiff was prescribed Ibuprofen for her pain in 2011[37] and took her medications as prescribed[38] in August 2014. In addition, the ALJ considered some evidence related to Plaintiff's "daily activities," in keeping with SSR 12-2p, 2012 WL 3104869, at *5. The ALJ noted that, in August 2014, Plaintiff was "walking 45 minutes per day and eating healthier."[39] As to "the nature and frequency of the person's attempt to obtain medical treatment for symptoms," the ALJ noted that Plaintiff sometimes reported little pain at her various appointments. For instance, in January 2015, Plaintiff indicated that she had headaches but no musculoskeletal complaints.[40] Treatment notes from gynecological appointments in 2016 and 2017 reflect a pain level of zero.[41] The ALJ also considered "statements by other people" at this stage in the decision. The ALJ noted that, in 2013, "[i]t was remarked that the claimant was pursuing her disability and is stressed out over that and also that the claimant's symptoms appeared psychosomatic."[42] APRN Latorre indeed observed that Plaintiff was "clearly stressed out" by pursuing her disability and that her symptoms "appear[ed] psychosomatic[.]"[43] In short, the ALJ looked *far beyond* the objective evidence. The ALJ evaluated the record as a whole and considered the factors enumerated in SSR 12-2p.

---

[37] R. 3240.

[38] *Id.* at 3241.

[39] R. 3241.

[40] *Id.* at 3242.

[41] *Id.*

[42] *Id.* at 3241.

[43] R. 691.

Plaintiff contends that the ALJ "discounted to insignificance" her claims of pain.[44] The Court rejects this argument. An ALJ is not required to *accept* a plaintiff's assertions of pain. *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). Here, in assessing the severity of her fibromyalgia, the ALJ considered Plaintiff's reports of pain. Not only did the ALJ "recognize[] that the majority of the records do reflect complaints of pain," but the ALJ combed the record and summarized many of these reports.[45] The ALJ noted Plaintiff's reports of wrist and shoulder pain in January 2013, lower back and right arm pain in March 2014, right knee and head pain in August 2014, neck pain in December 2018, body aches and a sore throat in January 2020, and abdominal pain in May 2022. The ALJ did not "discount" Plaintiff's pain into insignificance; instead, the ALJ weighed these reports of pain against all the record evidence, as she was required to do. *See Cheryl L.*, 2022 WL 2980821, at *8 (concluding that ALJ properly evaluated claimant's fibromyalgia by considering claimant's daily activities and medications, in compliance with SSR 12-2p); *Christine M. R. v. Saul*, No. 19-CV-1752, 2021 WL 129415, at *19–20 (D. Conn. Jan. 14, 2021) (same); *Travo v. Saul*, No. 19-CV-1335, 2020 WL 3888003, at *8–9 (D. Conn. July 10, 2020).

Finally, though the ALJ may have misunderstood one piece of evidence in the record, that error alone does not require remand. Plaintiff argues in her motion that the ALJ incorrectly found "no independent diagnosis of fibromyalgia absent the claimant's self-report."[46] Plaintiff contends that Dr. Nascimento formally diagnosed Plaintiff with fibromyalgia in 2012. The

---

[44] Memo. ISO Mot. to Reverse at 16.

[45] R. 3241–43.

[46] Memo. ISO Mot. to Reverse at 15.

Court has reviewed the treatment note from August 2, 2012, and the Court agrees with Plaintiff. Dr. Nascimento noted a "history of [systemic lupus erythematosus]" and a "history of [rheumatoid factor]," but he did not note a *history* of fibromyalgia.[47] Instead, he simply noted "fibro[myalgia]."[48] The Court finds that Dr. Nascimento formally diagnosed Plaintiff with fibromyalgia, in contrast to the ALJ's characterization. However, though the ALJ misinterpreted the note in question, the ALJ found Plaintiff's fibromyalgia to be a severe impairment at step two and carefully considered Plaintiff's pain at step four, as discussed above. The ALJ weighed and evaluated Plaintiff's symptoms; thus, even if the ALJ mischaracterized Dr. Nascimento's note, substantial evidence supports the ALJ's analysis.

### D.    Plaintiff's Past Relevant Work and the ALJ's Hypothetical Questions

Plaintiff also challenges the ALJ's interaction with the vocational expert (VE) during the hearing. First, Plaintiff argues that the ALJ failed to make a "specific and substantial inquiry into the relevant physical and mental demands" of Plaintiff's past work as a sewing machine operator. *Matejka v. Barnhart*, 386 F. Supp. 2d 198, 204–05 (W.D.N.Y. 2005). In response, Defendant maintains that the VE asked sufficient follow-up questions about Plaintiff's work, and, in the alternative, argues that Social Security Ruling 82-62, 1982 WL 31386 (S.S.A. Jan. 1, 1982), requires the RFC to match the demands of "either the specific job a claimant performed *or* the same kind of work as it is customarily performed throughout the economy." Second, Plaintiff contends that the ALJ directed a defective hypothetical question

---

[47] R. 637.

[48] *Id.*

to the VE, one that did not account for Plaintiff's actual impairments. The Court addresses these arguments in turn.

As to the first issue, a "claimant has the burden to show an inability to return to her previous specific job *and* an inability to perform her past relevant work generally." *Jasinski v. Barnhart*, 341 F.3d 182, 185 (2d Cir. 2003) (emphasis in original) (*also citing* SSR 82-62, 1982 WL 31386, at *3, which provides that past relevant work includes "the specific job a claimant performed or the same kind of work as it is customarily performed throughout the economy"). The "inquiry requires separate evaluations of the previous specific job and the job as it is generally performed." *Id.* "The inquiry . . . is not whether the claimant is able to perform the duties of her previous job, but whether the claimant is able to perform the duties associated with her previous 'type' of work." *Halloran*, 362 F.3d at 33.

In the Court's view, the ALJ sufficiently inquired into the relevant demands of Plaintiff's prior work as she actually performed it.[49] The ALJ first asked Plaintiff what she did during her time at Glamorette Fashion Mills. Plaintiff explained that she "worked [as a] machine operator making . . . t-shirt[] collars."[50] The ALJ asked several follow-up questions: she asked whether Plaintiff made clothes and whether plaintiff spent her work days sitting.[51] After some crosstalk, Plaintiff clarified that she sat for seven hours a day with a "break like

---

[49] Plaintiff does not elaborate on the argument that the ALJ failed to inquire into the *mental* demands of her previous work. *See Polanco v. Comm'r of Soc. Sec.*, 304 F. Supp. 3d 345, 358 (S.D.N.Y. 2018) (remanding where ALJ did not develop record regarding mental demands of past work but RFC included mental limitations). Here, Plaintiff does not argue that the RFC should have included non-exertional limitations; she only advocates for additional exertional restrictions. The Court therefore finds that Plaintiff does not argue that the ALJ should have inquired into the mental demands of Plaintiff's past work.

[50] R. 3280.

[51] *Id.*

every 30 minutes that we have to be standing."[52] The ALJ also asked whether she spent any time lifting, to which Plaintiff responded, "I don't know."[53] Later in the hearing, Plaintiff clarified that she operated a sewing machine, not a silk screen machine.[54] The Court finds that the ALJ sufficiently inquired into Plaintiff's past work making collars, as she actually performed it. *See Orcutt v. Comm'r of Soc. Sec.*, No. 17-CV-1072, 2018 WL 6033464, at *5 (W.D.N.Y. Nov. 15, 2018) (finding that ALJ adequately inquired into claimant's previous work by asking several questions about physical requirements of position).

Moreover, the ALJ was not required to conclude that "plaintiff retained the RFC to perform her past relevant work as it was actually performed <u>and</u> as it is generally performed in the national economy." *Cheryl L.*, 2022 WL 2980821, at *15. Instead, the ALJ was required to determine "plaintiff's capacity to perform her past relevant work as it was actually performed <u>or</u> as it is generally performed." *Id.*; *see Mack v. Comm'r of Soc. Sec.*, No 17-CV-924, 2019 WL 2027214, at *4 (W.D.N.Y. May 8, 2019) ("The regulations do not require explicit findings at step four regarding a claimant's past relevant work both as generally performed <u>and</u> as actually performed." (citation and quotation marks omitted)).

Here, the ALJ sufficiently inquired into Plaintiff's past work as performed generally in the national economy. During the hearing, the ALJ instructed the VE to identify Plaintiff's past work "as described by the Claimant and as customarily performed in the national economy."[55] The VE provided that information about Plaintiff's former role as a sewing

---

[52] *Id.* at 3281.

[53] *Id.*

[54] *Id.* at 3284–85.

[55] R. 3285.

machine operator, and the ALJ and the VE engaged in further discussion.[56] Then, the ALJ presented to the VE several hypotheticals, with different restrictions and limitations. In the Court's view, the ALJ therefore sufficiently inquired into Plaintiff's past work as performed generally in the national economy, in compliance with SSR 82-62. *See Cheryl L.*, 2022 WL 2980821, at *15 (finding that ALJ made specific and substantial inquiry into claimant's past work as performed in national economy by presenting various hypotheticals to VE).

Related to this first argument is Plaintiff's second argument: the ALJ's hypothetical question was "defective in significant respects."[57] Plaintiff contends that the ALJ based her hypothetical question and, by extent, the final RFC determination itself,[58] on the assessment "concocted at the Reconsideration level" by Dr. Golkar.[59]

Because the Court concludes that substantial evidence supports the ALJ's final RFC determination, the Court can dispose of this argument. *See Burnette v. Colbin*, 564 F. App'x 605, 609 (2d Cir. 2014) ("[Appellant] claims the RFC determination was not supported by substantial evidence, and it was therefore improper for the ALJ to rely on responses to hypothetical questions posed to the vocational expert that were based on that RFC. Because we have determined that the RFC determination was indeed supported by substantial evidence,

---

[56] *Id.* at 3285–86.

[57] Memo. ISO Mot. to Reverse at 27.

[58] *Id.* at 31 (conceding that the hypothetical question mirrors the ALJ's final RFC).

[59] The Court also rejects the related argument that Dr. Golkar's opinion rests *entirely* on a misapprehension of Dr. Klufas' assessment. Memo. ISO Mot. to Reverse at 28.. The Disability Determination Explanation provided by Dr. Golkar includes a long list of evidence received on reconsideration, including notes from Dr. Nascimento, Dr. Klufas, and Dr. Lago. R. 78–80. Thus, the Court concludes that Dr. Golkar reviewed these documents in developing the assessment on reconsideration.

[this] argument is unavailing."). More specifically, Plaintiff does not argue that the ALJ formulated a hypothetical that did not capture some restrictions in the final RFC determination; instead, Plaintiff seems to argue that substantial evidence does not support the RFC itself. The Court disagrees. Indeed, the ALJ reviewed thousands of pages of medical records, spanning over a decade. The ALJ summarized Plaintiff's relevant medical history in the nineteen-page decision.[60] Of relevance to Plaintiff's claim that she had reduced dexterity, ALJ noted that much of the record did not support such a contention.[61] The ALJ also considered Plaintiff's reports of her own activity levels and a doctor's recommendation that she engage in aerobic exercise.[62] Finally, the ALJ explained her decision to accord more weight to certain medical opinions and less weight to others. For instance, the initial DDS assessment was accorded "minimal weight" because "it was made by a non-examination physician who relied exclusively on the claimant's self-reports."[63] The Court acknowledges that some evidence in the record supports Plaintiff's position. In reviewing the ALJ's findings, however, the Court defers to the ALJ's "resolution of conflicting evidence." *Cage v. Comm'r Soc. Sec.*, 692 F.3d 118, 122 (2d Cir. 2012).

In short, substantial evidence supports the ALJ's conclusion that Plaintiff could engage in light exertional work with the relevant limitations. Because the hypothetical question at issue matches this RFC determination, the Court rejects Plaintiff's arguments on the subject.

---

[60] R. 3240–45.

[61] *Id.* at 3244.

[62] *Id.* at 3241, 3243.

[63] *Id.* at 3244.

**IV.     <u>CONCLUSION</u>**

For these reasons, the Court **grants** the Commission's motion to affirm and **denies** Plaintiff's motion to remand. The Clerk of Court is directed to enter judgment in favor of the Commissioner and close the case.

<b>SO ORDERED.</b>

Hartford, Connecticut
August 9, 2025

                                        /s/Vernon D. Oliver
                                        VERNON D. OLIVER
                                        United States District Judge